Case number 172637, Appeal from the District Court in the Middle District of Florida. May it please the Court, Your Honors, if I can, I want to get to the nuts and bolts of this. I'm rather ambitious. If there's three points I could reach, but I know there will be about two that might wind up getting through instead of the third. I want to go through the issue that the sanctions order was improperly entered. That would be the first point. Second point I want to try to get to is that the sanctions order after being entered is unsustainable under 54C, Rule of Civil Procedure under 55, and under the application of the case law thereafter. Third point, if we can get to it, Your Honors, is the collateral consequences of such a decision and how that affects. On the first point, I don't understand how you can say default was improper when you asked for default. Well, and Your Honor, I would disagree respectfully. I don't think the default was ever asked for, and in fact, the allegation that the default was asked for I think is rather spurious. That's not what occurred, even when you read through it. Essentially there was a discussion, the discussion was had, about the financial difficulties that were occurring, but nowhere was there any affirmative request for a default. And in fact, the way it was presented in the answer brief essentially took sentences out of context. That's not, that was not the position. So you're saying that the lower court's interpretation that you actually wanted a default because you weren't going to go forward with any, or respond to any of the court's orders, that the lower court was wrong in believing that you opted for default rather than to comply? Well, essentially I think what the court is suggesting is that somehow there was a silence, was a waiver, and I don't know that that's the case. So . . . Well, you made it clear to the district court that you had no intention of complying with the court's orders, right? No. Essentially I would disagree, Your Honor, and what we're talking about here is, and I believe if I'm correct in what Your Honor is suggesting, is that we have a period of 30 days for depositions missed and a discovery conference that were missed within a period of 30 days. I think that's what Your Honor is referring to. And to suggest that somehow in a case that has been pending for 13 months, if not longer at that period of time, for which there were three separate motions to compel, for which there were 30,000 documents provided from FASER to the other side, in response to all of those court orders, I think that taking this sentence out of context to suggest that, yes, we were saying to the court, yes, we want a default, is inaccurate and really belies the actual position of the litigant, which my client was at the time. And you also didn't show up for the technology tutorial, right? Your Honor, I'm not standing before this Court to say that missing two depositions and that technology conference should not have some form of repercussions from the Court. That's not what I'm standing here saying. What I'm saying is, one, the manner in which they were imposed was improper, especially after we look at Chudasama, which we presented and I didn't. The Court issued an order. Do I understand correctly? The Court issued an order having scheduled the depositions, requiring your client to attend, and your client didn't attend. And this was after repeated attempts in order to have your client provide people for their depositions. And so, essentially, what I think is important for the Court to look at here, and what we're presenting before you, Your Honor, is that there was a motion to withdraw filed. And essentially, yes, the client speaks through its attorney. What was the language used in the motion to withdraw? There was a word. I don't remember exactly what it was, but it was something default. Control default. Control default. 8986. This is your motion for conference, where this is your paper, where you say FASER wishes to discuss its quote, unquote, control default in these proceedings. And I understand, Your Honor, that that was presented, but that was not essentially what occurred. That's not what happened, and that's not what the client was going through at that period of time. You have discussions through one attorney, Mr. Acri, in that 30-day period in which the motion withdrawal is filed, and then you have what was those two missed dates. And essentially, and I'm — I apologize if I — Three missed dates. Three missed dates. I apologize, Your Honor. But I don't know if we had supplemented the record with it, but there was, oh, communications with the attorney about the scheduling issues related to the individuals. So, essentially, what I'm suggesting — But you've got court orders, and correct me if I'm wrong, but my understanding is each of those court orders actually said, if you don't comply with this order, you will be subject to sanctions up to and including default. And I can't deny that that's what it said, but what I would like to try to explain to the court is that we have procedures for this, and I don't want to lose short of my time because we both have the 54C arguments after and the 55. These are important questions that we have. I understand. So I have another question, too, which is on page — appendix page 1082. It's stated, and this is your client's paper in response to the motion for sanctions. It says, as FASER is defaulting in this matter. It says, indeed, as FASER is defaulting, such relief would have no effect on FASER. How is the district court to understand this phrase, as FASER is defaulting in this matter? Well, essentially, Your Honor, and I think we're taking a jump here. And so we're saying that the district court somehow suggested that FASER wanted the default when it never actually put that in writing. There's nothing within the order — But this is FASER's paper. I understand. But what I'm saying is Your Honor has suggested that somehow the court relied on FASER suggesting that there was a voluntary default, and there's nothing in writing from the court suggesting that there's a voluntary default. And, in fact, it never came from a voluntary default. This came from a motion for sanctions, after which we went 13 months with motions to dismiss outstanding in contravention at Judis Sama. But if we can, Your Honor, we can jump to the 54C. Yeah, I think it's better. Well, and that's fine. This judgment that was entered goes well beyond what was requested in the complaint. There's a finding of validity. There's an imposition not just against what the claim was, claim 13, for the data port on the firearm, this electronic firearm, but for all firearms. And when we get to that issue — Well, I mean, the court made clear in the contempt order that it was talking about — and this is exactly language from our TiVo opinion — that these products are ones that are not reasonably different or something like that. It went really different. Your Honor, respectfully, it went well beyond that. And, in fact, it did so in subsequent orders. So essentially, the only way I can liken this in having discussions in preparation would be as if there was some claim against Toyota for a navigation system. And so then Toyota sells cars with navigation systems. And then when the order gets entered because, let's say, Toyota defaults, it's not just against cars with navigation systems or the ability to have navigation systems. It's against all cars. And the reason being — and this is the logic behind the trial bench on this one — is that it was robbed — this is from the language — of the opportunity to make the determination. And that's in direct contravention of Rule 55, especially when we get to the case of Clapperot, which essentially states that you can hold the trial after to make these determinations. And Taser comes in and says, oh, well, it's defaulted on well-pled facts. Well, that's true, but not well-pled facts, not conclusions of law. And we know from Markman that validity is a conclusion of law. And so — — an assertion of invalidity would be a defense to an infringement claim, right? So even if you're right that a declaration of validity was not appropriate in this particular order, of what material impact would that be given our NALOC decision that says you would be precluded from ever asserting invalidity as it relates to the products that were covered by that infringement determination? Well, and I guess what I'm trying to say is that the preclusion is coming from an overbroad sanctions order, and that the sanctions order was not rationally related to the conduct. And so — So what's overbroad about the sanctions order? So you concede that whether it's a declaration of invalidity or simply the fact that you never asserted the defense, that validity as it relates clearly to the products identified in the complaint is off the table, right? If it did, I don't think that's what it does. And it goes to the products that aren't even in the complaint. It goes to all products. So that's just — You're saying that the injunction goes beyond products listed in the complaint? Yes. They're not the same products that are listed in the complaint? Correct. One hundred and fifty percent, Your Honor, correct. My client has not been able to sell any electronic firearm as a result of the order. And when I can come back before that, Your Honor — Where in your blue brief is this issued? It's in the — that's in the order. It says — No, I'm trying to figure out the issues that are on appeal. There's like 18 issues. No, no. I don't remember this issue being of those. And I apologize, because when I was preparing, I thought it would be easier for the oral presentation of the argument to present to Your Honors in a different fashion than it was laid out in the numerical. That's fine. But is it in your opening brief? It is. If it's not, then it's not an argument we're going to consider today. Oh, it is, Your Honor. All of those issues are in the opening brief and then responded to in the reply brief. They're just written in a different format. So — Where is it in your opening brief? And if I can re-hear Your Honor's question so I can concisely go — Where — you seem to be arguing right now that the scope of the injunction order was much too broad, and so I'm trying to figure out where in your blue brief are you appealing that issue. I understand that you're appealing the injunction order making a determination on validity as the trademark. That's correct. But what about this other issue you're now telling me that you've been enjoying from selling any of your products? I believe, and if I may, it was referenced initially under the section that Your Honor is saying as to validity, which referenced that the scope went too far. Validity was one of the issues. We went further in that, and I want to say — There. I'm looking at it now. So essentially, the opening brief — let me go to it — we got to validity in part — That whole section is 3K, isn't it? Yes. I think it was parts 1 and 2, and responded to in the reply brief, which expanded that issue related to the scope of the injunction being too far, and in addition, Your Honors, I believe we supplemented — Show me on the page where you say the scope of the injunction covered too many products. In the opening brief, Your Honor? Yeah. Yes. If I could have one second. I don't — I apologize, Your Honors, I'm wasting a lot of time referring back to an exact sentence within the brief, which if was not presented — I don't see this issue in your brief, having looked at it just now, and having looked at it before. I don't see this issue presented in your brief. Respectfully, Your Honor, I believe it's in the brief. It's 55 pages. I don't have the — or 50 pages or so, or all the briefs that we — and the reply brief. And in addition, I know that we set aside, or at least presented to this Court, some of the 60B motions, which also contain those issues, and this Court's not prevented from looking at that. I'm into my reserve time, Your Honors. For rebuttal. We'll give you two minutes for rebuttal. Thank you. May it please the Court, Pam Peterson, on behalf of Taser International. Fazer's egregious, flagrant, intentional obstructionist behavior and willful abuse of the judicial process — those are all the District Court's words, not mine — are well documented in the record, in the Court's sanction order, and in our opening brief. It was certainly not an abuse of discretion under the circumstances of this case, which were extreme, and in which Fazer violated very clear and numerous court orders under threat of default, as Your Honor pointed out. So, what about the scope of the injunction? Yeah. Now, first of all, do you concede that the Court had no authority to actually enter a declaratory judgment of validity? We do not, Your Honor. Regarding the scope of the injunction — Did you ask for a judgment of validity? We submitted a proposed order to the Court, which included that particular language — In your complaint, did you ask for a declaration of validity? So in the complaint, we asked for a declaration of infringement, and — So your answer is no to whether you asked for a declaration of validity? Not expressly, Your Honor, but I think how you specifically get there is that there are well-pleaded facts in the complaint relating to the federal registration of the trademark and the issuance of the patent, and the ownership relating to those particular pieces of intellectual property. So those factual allegations on Fazer's default are taken as true, and there are legal consequences that then flow from that, including that the patent is deemed valid and enforceable, which was the language that the Court used. That goes back to the point I was making before. It may be particularly true, and in light of our NALAC decision, it would seem true that they would be precluded from later asserting invalidity as it relates to the products that were subject to this infringement judgment. But that's not the same as a declaration of validity for all purposes. Well, I think that the — obviously, in terms of a declaration for infringement, it subsumes the validity of the patent and the trademark. Well, Common versus Cisco, the Supreme Court said, you know, that's not right. They're two different things. But there are well-pleaded facts in the complaint relating to the ownership, which gives rise to a legal presumption of validity. And so there is nothing improper then with the Court stating — these pieces of property enjoy presumption of validity, and that's all that continues forward from this order, that the presumption continues on, and that's it. Well, the presumption, yes, certainly does continue on. But as to FASER, which defaulted in this matter, it's binding as to them. Right. That's a different question. It's binding as to them as it relates to the products that were the subject of this infringement judgment. Correct. Correct. I'd cite to the Court an additional authority, Grayfond, G-R-Y-P-H-O-N, Mobile Electronics versus Brookstone, which is a 2016 Central District of California decision at 2016 Westlaw 763987, which addresses this specific issue. And it found that plaintiff's trademark and patent was valid on default under a Rule 54C analysis based on statutory presumptions arising from the ownership allegations in the complaint. So in that case, there was no pleading that was asking for a declaration of validity, or is it that case distinguished in that fashion? No, it's the same as this one, where there was a request in terms of infringement, and the Court found that the factual allegations in the complaint relating to ownership of the trademark and the patent, and then incorporating the actual documents as exhibits to the complaint, which we did here as well, was sufficient in order to support the presumption of validity then stated in the order. But you agree that's not binding on this Court, right? I'm sorry? That is not binding on this Court, correct? No, not binding on this Court, Your Honor, but certainly another Court that had done this analysis under Rule 54C and did come out the way that we did. I understand that the issue is not before us in this appeal, but one of my concerns is that once the contempt was sought, doesn't our en banc case law require a district court to do an analysis of whether or not the products are the ones identified in the complaint and in the judgment, or as even the district court says, which I think he's rightly allowed to say, not confusingly similar to those products. But he never did that analysis. Isn't that a problem? Well, it was done, certainly, after this interlocutory appeal was filed, because FASER continued to violate the injunction and attempt to sell these products and to demonstrate them to law enforcement after this injunction was entered. And so we filed a motion for contempt. The Court held a four-hour evidentiary hearing, and it was at that hearing for the first time that FASER raised this issue of, hey, we have a product that's also called an enforcer-conducted electrical weapon that doesn't include a data port. And so that's a non-infringing product that we should be allowed to continue to sell. The Court, in its ruling, specifically found that that issue had never been raised, and FASER had never been allowed any discovery in the case relating to that, that the injunction related to enforcers' EWs, and that they had never, prior to that time, ever argued or provided discovery that there was a supposed non-infringing product. So the Court then determined that because of that, again, because of their willful abuse of the process and failure to comply with discovery orders, that it could not make that determination, and that they had then waived that in terms of whether or not there was another product. And as Your Honor pointed out, it's not raised in the opening brief here, and it is waived on that ground as well. But I want to take you back also, though, to the specific sanction response that FASER filed in this case, in which it specifically says that a declaratory judgment of general validity and enforceability of the patent and the trademark would have no additional effect on FASER, who would be already bound on infringers. And that's at Appendix 1083. And so the response conceded that the deemed valid language in the proposed order didn't add anything additional as to FASER. As it said, as Your Honor pointed out, as FASER is defaulting in this matter, such relief would have no effect whatsoever on FASER. So the only— So you want us to just simply interpret that essentially declaratory judgment of validity as only relating to the circumstances of this case and to the presumption of validity that attached and had not been rebutted for this case and these products? Right. The 54C argument that was made in the district court wasn't as to the effect of this language on FASER. And so it waived that argument. It was only as to hypothetical unnamed third parties that somehow might come into conflict with TASER in the future. And as to those people, it was saying that a general declaration of validity would be improper. But of course, those folks would not be bound by a default order or an injunction specific to FASER. So that was the limitation that FASER made itself to the district court in the sanctions response. And so they've waived, I think, the issue related here. And as they've acknowledged, it doesn't have any additional impact on them because they would be bound by the infringement injunction in any event in exactly the same manner that they are in terms of the validity and enforceability language, which are, in fact, presumed by statute. And bound by the infringement judgment and not allowed to assert a defense that they never asserted before. Right? Yes. That was a softball question. Well, OK. Yeah. So and then the other, and so I think there's no correction that's really warranted here on the record. Certainly, there's no voiding of the injunction in any way. If your honors would find that that language was somehow beyond the scope, it can certainly be remanded with orders to remove that particular language. But I do think that here, FASER has acknowledged that it has no impact on it, and there's really no reason to do that. At the time of the default proceedings, did they ask for the court to have a hearing to define exactly which products it would apply to? No, your honor. They did not. Did they move for reconsideration for that purpose? No, they didn't. They subsequently, after this appeal was filed, filed some Rule 60B motions attempting to expand the scope of what was in front of the court at the time. But at the time here, they didn't ask for a hearing under Rule 55, which of course is discretionary with the court. In any event, they didn't ask for it. The court didn't hold one. And I think based on, again, the well-plaid facts in the complaint relating to the ownership of the trademark and patent. The other part of the complaint that they don't specifically raise as an issue, but they asked this court to basically allow them or give them permission to go to the TTAB and continue to pursue the cancellation action that was suspended in that court. And there is language in the court's injunction order at Appendix 14, Paragraph 4, that bars them from doing that, from challenging the validity or enforceability of that specific to the patent registration, or the trademark registration, I'm sorry, the 789 registration. And so they don't, they didn't object to that language in the proposed order in front of the district court. So again, I think that it's waived. But in any event, this court's decision in NASILAC, I think, is on all fours with this. I do, however... But that was an appeal from the TTAB, right? It was, it was. And in the contempt order, the district court judge conceded that he had no authority to tell the TTAB how to apply its own preclusion rules. Yes, but I think that here, and I do want to correct a misstatement in our answering brief on page 40, relating to that particular case, and apologize for the error there. The holding in that case was not based on invalidity being a compulsory counterclaim. But instead, that claims of trademark invalidity that collaterally attack a prior infringement judgment are subject to claim or defendant preclusion. So the result is the same. And technically, specifically found it wasn't a compulsory counterclaim. Correct. So the result is the same, but under a different ground. And so there, the court specifically found that a default judgment can be raised judicata under these types of circumstances where it's used as a collateral attack on a prior injunction or infringement finding, and precluding then a subsequent cancellation action. So I do think that it supports that court's, the court's language there as well. Also, specifically, I want to refer the court to the district court in connection with the issue also specifically in the contempt order that's now on appeal in front of this court in a separate matter. But that particular document, that order, May 4th of 2018, was issued after this case was fully briefed. And it's district court number 271 at pages 6 through 7. And because the issue was raised at the contempt proceedings relating to this particular clause and the prohibition, prospective prohibition about continuing to further that litigation. And the court in the contempt order specifically found that that language was proper based on Fazer's egregious failure to abide by the court's orders and otherwise participate in this litigation. And it cited a statute and a variety of authorities in that decision, which I would commend to this court as additional authorities that also support this. Is the district court document number on that one? It's document number 271 at pages 6 and 7. And it cited several authorities confirming its power to enjoin the litigants from instituting further litigation, particularly as a sanction, when it's done as a sanction against parties who abuse the judicial process. And so I would just commend those authorities to the court as well. If this court were to determine that the prohibition on continuing the cancellation action is improper or premature for any reason at all, Taser would request language that it be stricken without prejudice to fully briefing the claim preclusion issues at such time as Fazer seeks to reactivate its cancellation petition to make clear that that's not being resolved on the merits, but that further briefing on that would be appropriate at the given time so there's no confusion relating to that. I briefly just want to touch on the second office action, which is raised quite substantially in the reply. Well, he never got to that part, so... Okay. Okay. All right. Thank you, Your Honor. Unless you have any further questions, I'd ask that the injunction order be affirmed in its entirety and that the matter be concluded. Thank you. Thank you, Your Honors. And if I may, just to rehash a couple of things here, and that is we started with the imposition of the sanctions order, and I think we should start at genesis. We start at the beginning. And part of what I'm getting at here is that we went 13 months without an answer on a motion to dismiss. The pleadings were not framed. The quote from Chuda Sama, and I'll read it quickly. Allowing a case to proceed through pretrial processes with an invalid claim that increases the cost of the case does nothing but waste the resources of the litigants in the action before the court, delay resolution of disputes between other litigants, squander scarce judicial resources, and damage the integrity of the public's perception of the federal judicial system. And that's essentially what had occurred here. So we jump immediately into, with this Court, how come you said you were going to default? Why were you agreeable to a default? It's because the little guy got hammered in discovery for 13 months with a motion to dismiss pending. Second, in one minute, what I want to try to get to also, Your Honors, is that this Court permitted, well, really, in fact, I'll finish with those two, and that's it. That is, there were other sanctions available. There were other sanctions that were absolutely available and could have been used. They could have struck both of those witnesses, any of those witnesses at trial. They could have imposed financial sanctions. They could have imposed daily financial sanctions. None of those things occurred. And instead, they could have struck the motion to dismiss and required an answer in affirmative defenses. Also, counterclaims, if you had any. And that didn't happen either. And so, essentially, we have to recommend any of those alternative sanctions to the Court. Absolutely, Your Honor. In fact, here's my relief in my ten seconds. I think the Court should reverse the order. Wait, wait, wait. I'm saying at the time that this whole thing was ongoing, did you ask the Court to consider alternative sanctions? Your Honor, I was not present before the Court at the time. And I don't believe that. No, no one did. Okay. And I don't believe they did. If the Court, for my two seconds to ask for relief. Your time's up. Thank you, Your Honor. Okay. Thank you. All rise. The Honorable Court has adjourned for this morning. It's in the clock. A.M.